# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| THERESA M. METTY, | ) | |
| | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | No.  05-CV-04113 |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| MOTOROLA, Inc., | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is a motion for summary judgment filed by Motorola, Inc.

("Defendant") against Theresa M. Metty ("Plaintiff") pursuant to Federal Rule of Civil

Procedure 56.  For the reasons set forth below, Defendant's motion is DENIED in part and

GRANTED in part.

## BACKGROUND

Plaintiff was hired in November of 2000 as Corporate Vice President and Director of

PCS Worldwide Supply Chain for Motorola, Inc.  Her direct supervisor at that time was Mike

Zafirovski ("Zafirovski").  Over the next several years, Plaintiff was granted yearly raises and

bonuses, received consistently positive reviews from her direct supervisor, and in March of 2004

was promoted to Chief Procurement Officer, thereby incorporated into the Senior Leadership

Team ("SLT").  During this time, there were few significant problems indicating tension, or in

Defendant's words, "noise," surrounding Plaintiff; there were several instances of negative non-

supervisory comments,[1] and ethics complaints that were nonetheless resolved.[2]  Plaintiff did

meet with Marshall Goldsmith ("Goldsmith"), an executive coach who was also working with

Motorola employees Ron Garriques and Tim Cawley.  In January of 2004, Plaintiff's training

stopped, though accounts vary as to who terminated the work and what motivation lay behind the

fact that Goldsmith did not demand payment for services rendered.  In any event, Goldsmith's

final communications with the Plaintiff seemed to indicate that she had made significant progress

but that some issues hadn't been addressed, including her ability to delegate and set priorities.[3]

        Starting in July of 2004, work was performed on Project Olympics ("the Project"), which

was intended to restructure many aspects of Motorola and, in particular, centralize the

company's supply chain functions.  Plaintiff's and Defendant's accounts of this project and

Metty's involvement in it vary.  Defendant maintains that Plaintiff consistently failed to meet the

demands of her role in the Project, by failing to attend meetings, prepare updates in a timely

fashion, or support the scope and vision of the project.  Plaintiff, on the other hand, maintains

that the project from the outset was structured to require only limited involvement from her.

Over the course of 2004, the Project team met, drew up plans, provided updates, and eventually

introduced the fruits of its labors to a meeting of the SLT in November of 2004 ("2004 T3

Meeting").  Once again, accounts of this meeting vary, with Defendant claiming that Plaintiff

_____

        [1]For example, Plaintiff's performance reviews in 2002 and 2003 did include direct
reports that Plaintiff "can be criticial with high emotion (a bad combination), she can blame
others when it is an institutional error,"and "could empower the people around her and use her
energy to influence people to achieve more."  However, such comments generally represent the
minority of the comments in these reviews.

        [2]*See* Report of the Ethics Committee re Investigation re Metty's Numbers, Def. 7682-86,
and Ethics Tracking Report re investigation of Metty travel expenses, Def. 7672-81.

        [3]Met. 2641-43.

failed to present required materials and instead presented independent research of her own, while Plaintiff maintains that she met all demands that were placed upon her.

In Fall of 2004, Zafirovski agreed to leave after Ed Zander ("Zander") became CEO. Zander began a company-wide restructuring in December of that year that incorporated the Project's recommendations. A variety of changes resulted, including the introduction of a new position of acting Global Supply Chain Leader ("GSCL"), later to become a permanent position. This new position was considered to be above Plaintiff in the Motorola hierarchy. Plaintiff expressed interest in this position but was not offered it. Instead Mike Fenger ("Fenger"), a 37-year old male whom Plaintiff claims was significantly less-experienced, became acting GSCL and by January 2005 had become Plaintiff's supervisor. At this point, Plaintiff was informed that she would no longer be responsible for indirect procurement, and would no longer be a member of the SLT. Plaintiff was offered the option of taking a severance package at this time but declined. During the month of January, Plaintiff also made clear that she was interested in the permanent GSCL but was told she was not being considered.

Leading up to Plaintiff's discharge in April of 2005, Defendant maintains that the SLT's trust in Plaintiff continued to deteriorate. According to Motorola's account, which was largely corroborated by members of the human resources department and SLT executives, a great deal of noise had been heard from Plaintiff's co-workers about her personality and work style, and the growing consensus among members of upper management was that she was too focused on traveling and micro-managing, didn't accomplish the macro-level restructuring they sought, failed to engage the Project Olympics process, and generally took credit for others' work. This alleged decline in the SLT's perception of Plaintiff's capabilities culminated in the T1 meeting at

the end of February and beginning of March, 2005 ("2005 T1 Meeting"). Meeting attendees

engaged in a new Talent Review poll by which the best and worst high-level employees would

be ranked.[4] At this meeting, the SLT determined that Tony Mampilly (Mampilly") would be

invited to take the direct procurement position then held by Plaintiff. Though there is a great

deal of disagreement between the parties regarding the trustworthiness of this process, in any

event Plaintiff, along with one other elected officer, was given the worst possible score.[5]

In light of the results of the 2005 T1 Meeting Talent Review, in March of 2005 Fenger

informed Plaintiff that she would no longer be employed in her current position and should meet

with Arlis McLean ("McLean") to discuss options for the future. Mclean offered her the

opportunity to seek out other employment within the company, but the human resources

department and Plaintiff were unable to come to a mutually satisfactory position to which she

could apply. At this point, there were extended negotiations over a potential severance package

that would be given to the Plaintiff at her departure, with much acrimony focused on the fact that

Plaintiff would not be allowed to maintain employment until her stock options would vest,

approximately two years later. As a last ditch effort, Plaintiff mentioned that she was

considering filing a discrimination complaint with the EEOC, but this failed to restart

negotiations.

Plaintiff executed a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC") on April 14, 2004. In it, she alleged sex, age, and other discrimination

---

[4]This 9-box system invited each SLT member to rate each of Motorola's executive
officers with a "1" or "2," which indicated that they were among the best officers in the
company, or a "10," which indicated they were among the worst.

[5]15 "10"s.

that took place between December of 2004 and April of 2005. Included in the two-page attachment was a description of the above circumstances, along with additional detail regarding her requests to find out the reason for the adverse employment decisions.  Plaintiff claims that these inquiries were met with the response that the SLT no longer supported her due to "noise" from her fellow employees.  On July 19, 2005, Plaintiff filed this complaint against Defendant for discrimination and retaliation under Title VII, factually based on Motorola's actions including its promotion of other employees, reduction of Plaintiff's work responsibilities, and the fact and terms of her discharge.

## STANDARDS

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law.  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party."  *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and

instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial.  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute.  *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989).  This evidence provided by the non-movant must be sufficient to enable a reasonable jury to find in his or her favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

In ruling on summary judgment in a case of discrimination in the workplace, "the court should review all of the evidence in the record."  *Reeves*, 530 U.S. at 150.  In general, a lower court should not substitute its reasoning for that of the fact finder by dividing up the evidence to determine credibility, and will instead leave it to the ultimate fact finder to determine whether the cumulative evidence is sufficient to prove intent to discriminate.  *See generally, id.*

## ANALYSIS

There are two ways for a plaintiff to prove a case of discrimination under Title VII – the direct method and the indirect method.  The plaintiff proves a case under the direct method by

putting forth enough evidence, whether direct or circumstantial, to raise a genuine issue concerning the employer's motivation in carrying out the challenged employment action. *See e.g., Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Plaintiff does not argue that she has offered sufficient direct evidence that the adverse employment actions taken against her resulted from discrimination on the basis of sex. Instead, she relies on the second method; the indirect, burden-shifting method first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Under the burden-shifting method, the plaintiff bears the initial burden of producing evidence to sustain a prima facie case. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742 (7th Cir. 1999). Once the plaintiff establishes the prima facie case, the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the employment action. *Id*. If the employer offers a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is pretextual. *Id.* The ultimate burden of persuasion rests with the plaintiff to show impermissible motive or intent. *Id.* Employees lose if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish, trivial, or even baseless. *Hartley v. WI Bell Inc.*, 124 F.3d 887 (7th Cir. 1997).

Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In order to survive a motion for summary judgment against Plaintiff's claim of sex discrimination under Title VII, she must be able to establish a prima facie case of sex discrimination. Plaintiff must therefore show: (1) she is a member of a protected class; (2) she was meeting the employer's legitimate expectations; (3) she

suffered an adverse employment action; and (4) other similarly-situated employees who were not members of the class were treated more favorably. *Rozskowiak v. Village of Arlington Heights*, 415 F.3d 608 (7th Cir. 2005); citing *McDonnell Douglas*, 411 U.S. at 802; *see also Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002).

*Retaliation*

Section 2000e-3(a) makes it unlawful for an employer to discriminate against an employee because he or she opposed a practice made unlawful by Title VII, whether or not the employer's action violates Title VII in the absence of the retaliatory intent. 42 USC 2000e-3(a); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994). Essentially, Title VII protects an employee from "retaliation for complaining about the types of discrimination it prohibits." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000). "To establish a prima facie case for unlawful retaliation, a plaintiff must prove three elements: (1) she engaged in statutorily-protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (quoting *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001)).

At the outset, we address the argument that the retaliation claim is beyond the scope of the Plaintiff's EEOC complaint and therefore barred. "A Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (internal citations omitted). Plaintiff did not include allegations of retaliation in her EEOC charge, nor are her current allegations of retaliation

"reasonably related" to the only allegations in her EEOC. "Claims are reasonably related if there

is a factual relationship between them...At a minimum, this means that the EEOC charge and the

complaint must describe the same conduct and implicate the same individuals." *Ezell v. Potter*,

400 F.3d 1041, 1046 (7th Cir. 2005) (internal citation omitted).

Plaintiff failed to check "retaliation" as one of the "circumstances of alleged

discrimination" in the EEOC Charge of Discrimination, opting instead to list "sex," "age," and

"other" as the grounds on which she was discriminated.[6]  This failure is not necessarily

determinative, and in past instances courts of this circuit have looked to the entire context of the

EEOC form, subsequent Federal complaint, or surrounding facts before deciding whether or not

Plaintiff's claim should be barred as beyond the scope of the EEOC filing.  *See, e.g., Babrocky v.

Jewel Food Co.*, 773 F.2d 857 (1985).  In this instance, however, none of these factors weigh in

Plaintiff's favor.  There is therefore little to suggest that Plaintiff should not have been required

to give Motorola the opportunity to address her retaliation claim at an earlier date.

At the time the she filed the EEOC form, Plaintiff was in close consultation with counsel,

so the lack of personal experience or technical knowledge that would otherwise demand a degree

of flexibility in reading the form is not appropriate here.  In addition, when given the chance to

expand on the "other" category listed on her complaint form by specificying relevant details in

an attachment, she nowhere mentioned either the protected actions that she took to warrant the

Defendant's alleged retaliation, nor a causal connection with the adverse employment actions in

question.  In addition, listed in the EEOC form was a range of dates – December 1, 2004 through

---

[6]Def. 006319.

April 13, 2005 – that would make the allegedly protected actions remote in time and therefore unlikely to be causally connected.[7]

In addition, the flexible approach of looking at whether a subsequent claim is "reasonably related" to the EEOC claim, i.e., determining whether there is "a factual relationship between them" by considering whether the charge and complaint "describe the same conduct and implicate the same individuals," *Ezell*, 300 F.3d 1046, does not assist the Plaintiff. It is fatal to her retaliation claim that whenever she was given the chance to assert facts on which that claim could be based, she failed to assert the circumstances on which she now relies, and instead only provided those facts which supported a distinct claim for discrimination. Even when she was later given the opportunity to assert her history of advocacy as a factor in the allegedly discriminatory retaliation in her complaint, Plaintiff again neglected to establish the relevant protected activities; Plaintiff "asked Human Resources to give her one *nondiscriminatory* reason why she had been demoted and why she was not being considered for the position," and "questioned Motorola as to the reasoning behind these decisions and specifically asked whether sex discrimination was behind her demotion and Motorola's refusal to appoint her to the Global Supply Chain Leader position." (Compl. ¶¶ 26, 28.) However, none of this even suggests that she suspected or alleged retaliation. Instead, the facts necessary to establish that claim, i.e., her history of advocacy for women and Defendant's awareness of it, were only introduced after the complaint was filed and are generally distinct from those used to bolster her discrimination claim.

---

[7]Plaintiff notes a discussion with Kay Hoogland that took place in the spring of 2004, a review of diversity practices that took place in 2003, and various acts of advocacy with unclear dates which largely took place in 2003. (Metty Dep. at 43-61.)

Plaintiff should have provided Defendant with proper notice that she would be claiming discriminatory retaliation based on her "advocacy for women" but failed to do so. The filing of an EEOC complaint is the most commonly identified "protected activity" in Title VII cases, *see, e.g., Smart v. Ball State Univ.*, 89 F.3d 437, 440-41 (7th Cir. 1996), though the statute refers to protected activities aside from this action:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). The statute therefore allows for the possibility that Plaintiff's other actions might fall under the purview of Title VII. However, Petitioner's vague references to advocating for women's rights within the company do not adequately establish that her advocacy rose to an legally actionable level, much less one that could have caused her employer to retaliate. Even when viewing the allegations in the light most favorable to Plaintiff, she therefore fails to establish that her retaliation claim satisfies the necessary precondition of having been raised in the EEOC complaint.

<u>Discrimination</u>

There is no dispute that Plaintiff is a member of a protected class and that she suffered adverse employment decisions, therefore the debatable factors in Plaintiff's prima facie case for sex discrimination are whether or not she has advanced sufficient evidence on which a reasonable jury could decide: (1) that she was meeting her employer's legitimate performance expectations; and (2) whether she was treated less favorably than similarly-situated male employees. *Rhodes*, 359 F.3d at 504. Plaintiff generally points to her record of raises,

promotions, bonuses, and improved economic indicators during her tenure to establish that she was qualified, and points to men in similar positions within the company who did not share these qualifications but nonetheless remained with the company or ended their employment under better circumstances. For the following reasons, this court finds that Plaintiff has satisfied her prima facie case for discrimination.

The first contested element of this prima facie case is the adequacy of the evidence intended to prove Plaintiff met reasonable employment expectations. *Id.* It is not for this court to determine whether the employer's expectations were the appropriate ones for them to have, or if they had a realistic approach to those expectations; "so long as the employer's employment expectations are in good faith, without fraud or deceit, we only determine if the employee met them." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000). This prima facie demand is not intended to be onerous, *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), but Plaintiff must nonetheless advance real proof that she adequately satisfied the demands of the workplace, rather than conclusory assertions regarding her qualifications. *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998) (finding that the employee's own appraisal of the work they were doing cannot create a genuine issue of fact regarding the accuracy of performance evaluations). Even when employee's self-appraisal contains true statements regarding his or her performance, the employer is still "entitled to determine that the deficiencies in his performance outweighed such accomplishments." *Id.*

Plaintiff focuses a great deal on her success in achieving the formal performance objectives of her position. Rather than simply relying on her own self-evaluation in attesting to that success, she references formal measures within Motorola, such as performance reviews,

promotions, raises, bonuses, and economic indicators that improved under her tenure, most of which are uncontested. These formal measures lose some of their evidentiary weight because they reflect past impressions of her work rather than the perceptions of the employer at the most relevant moment, i.e., when the adverse employment decision took place. *See Fortier*, 161 F.3d at 1113 ("[E]arlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken."); *see also Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 452-453 (7th Cir. 1998) ("[P]ast raises and bonuses do not prove that [plaintiff] was meeting [employer's] legitimate expectations at the time of his discharge.").

In response, the Defendant's primary complaint about her performance relates to interpersonal conflicts, i.e., the "noise" made by her co-workers, and the general, largely subjective, lack of support within the SLT – all valid reasons for terminating her employment that have little to do with her success in meeting her position's more formal demands. Plaintiff admittedly advances little information to directly contradict Defendant's argument on this point, as she has not elicited evidence that accounts of her interpersonal conflicts were fabricated or that the SLT did in fact support her. However, she has still advanced evidence on which a reasonable jury could find that she had met Defendant's expectations. *See Johnson*, 170 F.3d at 743 ("In contesting whether [the plaintiff] met [the employer]'s legitimate expectations...[plaintiff] bears a burden only of producing some evidence that he was meeting [the employer]'s legitimate expectations. In coming forward with consistently positive employment evaluations and [the company president's] recommendation, [plaintiff] has met his burden."). A reasonable jury could find that Plaintiff has met the expectations of her employer due to the fact that: (1) the severity of the complaints and problems involving Plaintiff occurred

for some time, yet she managed to maintain her position over the course of four years during which she received bonuses, raises, and a promotion; (2) the cited employment expectations that weigh negatively against the Plaintiff revolve almost entirely around subjective evaluations of interpersonal skills that, while valid, are nonetheless subject to closer scrutiy, *see Nellis v. Brown County*, 722 F.2d 853 (7th Cir. 1983); and (3) the relatively abrupt shift in Plaintiff's performance indicators, discussed in the pretext section below, might be seen as a reflection of Defendant's explicit desire to be rid of her rather than providing proof of Plaintiff's occupational failings. Ultimately resolving these issues requires alloting evidentiary weight and balancing countervailing evidence, tasks that are therefore best left to a jury. For present purposes, it is sufficient that Plaintiff has satisfied this prong of her prima facie case.

Plaintiff must find a similarly situated employee under the fourth prong of the McDonnell Douglas test for prima facie discrimination. *Rozskowiak*, 415 F.3d 608. Plaintiff must therefore show that similarly-situated employees dealt with the same supervisor, were subject to the same standards, engaged in similar conduct, yet were treated more favorably absent circumstances that would distinguish their conduct or treatment. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). To meet this burden, Plaintiff must therefore identify a male co-worker who is directly comparable to her in "all material respects." *Burks v. Wisconsin Dept. of Transp.*, 2006 WL 2788439, at *4 (7th Cir. 2006).

Defendant moves for summary judgment on the grounds that Plaintiff has not identified similarly-situated employees who were treated more fairly. In considering this challenge, a court must look at all relevant factors and on the context of the case. *Radue*, 219 F.3d at 617. The Seventh Circuit has more than once "upheld the entry of summary judgment against a Title VII

plaintiff who has presented only his own uncorroborated, conclusory statements that similarly situated co-workers were treated differently." *Oest v. Illinois Dept. of Corr.*, 240 F.3d 605, 714 (7th Cir. 2001). However, "an employee need not show complete identity in comparing himself to the better treated employee...he must show substantial similarity." *Radue*, 219 F.3d at 618.

Defendant's challenges to Plaintiff's comparisons are not compelling. With respect to the failure to promote, Plaintiff asserts that both Fenger and Mampilly were men who were placed in positions that she sought. In terms of failure to keep her on, Plaintiff points to Bob Perez, Carl Thielk, Shail Godambe, and Tim Cawley, who were also upper level Motorola employees shifted out of their positions as a result of the reorganization, but who were nonetheless rehired in other capacities. As to the disparity in severance pay, Plaintiff points to Glenn Gienko, Tom Lynch, Leif Soderberg, Dennis Carey, who were all let go based on performance but who nonetheless received higher dollar amounts at discharge.

Defendant challenges these comparisons based on the fact that in every case these employees were not involved in the SLT, or had different job descriptions. However, an employee's presence or absence from the SLT is not intuitively a "material respect" in terms of the ultimate determination of employee qualifications in this matter. Also, all three were involved in supply chain work and were ultimately responsible to the SLT, so the fact that the the comparable employees were heads of different sections does not preclude "substantial similarity" in their positions in the company. *Radue*, 219 F.3d at 618; *see also Jordan v. City of Gary, Indiana*, 396 F.3d 825, 834 (2005) (analyzing the similarly situated prong according to whether the compared parties shared the same job level rather than the same job). The fact that they may not have had identical performance issues is also of no avail, since the real level of

-15-

Plaintiff's performance remains at issue. Finally, while Defendant may be correct that many factors go into calculating severance pay, this still does not undermine the obvious disparity in dollar amounts that Plaintiff has presented in her prima facie case.

*Pretext*

Having established sufficient evidence by which a reasonable jury might find that Plaintiff has presented a prima facie case, that case must next be evaluated in light of the Defendant's proferred nondiscriminatory reason for the adverse employment decision and whether or not that reason was merely a pretext. *McDonnell Douglas*, 411 U.S. at 804 (1973); *see also Peele v. County Mut. Ins. Co.*, 288 F.3d 319 (7th Cir. 2002) (applying the McDonnell Douglas framework and finding that the district court erred in not first establishing that the requirements of the prima facie case had been met). Plaintiff accomplishes this by showing that the defendant's stated reasons are factually baseless, did not actually motivate the defendant, or were insufficient to motivate the adverse employment action. *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). "We are not concerned with whether or not the employer's actions were mistaken, ill-considered or foolish, so long as the employer honestly believed those reasons." *Burks v. Wisconsin Dep't of Transp.*, 2006 WL 2788439, at *6 (7th Cir., Sept. 29, 2006); *see also Nawrot v. CPC Int'l*, 277 F.3d 896 (7th Cir. 2002). In the words of this circuit, pretext consists of "deceit used to cover one's tracks"; *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681 (7th Cir. 2000) (considering as relevant factors the lack of "statements by the [director], no disparate impact from managerial interventions, nothing except the raw fact that [the director] stepped").

In order to establish pretext, the Plaintiff must put forth evidence suggesting that the employer itself did not believe the proffered reasons for termination. *Id.* (citing *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 397 (7th Cir. 1998)). Plaintiff's subjective determination of the true motivation behind the adverse employment action is an insufficient basis for finding that the employer's explanation is pretextual. *See Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997), quoting *Mills v. First Federal Savings & Loan Ass'n*, 83 F.3d 833, 841-42 (7th Cir. 1996) ("[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed").

Plaintiff must point to specific facts that sufficiently cast doubt on Defendant's proffered reasons for her termination. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 578 (7th Cir. 2003). If Defendant honestly believed the nondiscriminatory reasons it offered, Plaintiff cannot prevail. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir. 1999). Furthermore, Plaintiff must present facts "to rebut each and every legitimate, nondiscriminatory reason advanced by the [defendant] in order to survive summary judgment." *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1007 (7th Cir. 2001). This court "does not sit as a superpersonnel department that reexamines an entity's business decisions, [r]ather, we must determine whether the employer gave an honest explanation of its behavior." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971 (7th Cir. 1999).

Plaintiff intimates that her qualifications were so far superior to those of the men who replaced her or took her place that Defendant's proffered explanation must be a pretext. However, this argument is unavailing in that it does not account for the legitimate consideration

of perceived personality problems that seem to be at the heart of Motorola's explanation, and a court will rarely second-guess an employer's evaluation of employee credentials. *See Ash v. Tyson Foods, Inc.*, 126 S.Ct. 1195 (2006) (demanding that allegedly superior credentials must "jump off the page and slap you in the face"); *Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002) (finding in a refusal to hire case that "evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no disute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue") (citation omitted). This does not seem to be the case here in light of the personality and transitional concerns of Defendant.

For its part, Defendant repeatedly relies on an explanation of Metty's adverse employment decisions on factors that are, at best, subjective, and therefore more appropriate for resolution by a jury. *See Ashman v. Barrows*, 438 F.3d 781, 784 (7th Cir. 2006). The evidence points to the fact that there were significant personality tensions between Plaintiff and other Motorola employees: "negative feedback has gotten to Ed"[8]; Plaintiff's removal "wasn't about her performance," but was due to "lack of support for her at the T1" and "about fit"[9]; as well as generalized complaints about "noise."[10] Lack of support, rather than disappointing performance, is an acceptable nondiscriminatory reason for the adverse employment decision.

However, there is sufficient evidence that would support a jury finding that Defendant's actions and assertions leading up to Plaintiff's departure were pretextual, the only remainng

---

[8]Def. 522.

[9]McLean Dep. at 180.

[10]Carey-Ray Dep. at 201.

-18-

relevant question. Defendant offers very few objective or quantifiable measures pointing to Plaintiff's performance failings, and there is evidence that Zander and those below him attempted to construct a record or paper trail to make up for that failure, thereby ensuring that their decision to terminate Plaintiff could not be challenged. First, any evaluations that they are able to advance largely took place in 2005, and the conspicuousness of the altered treatment provides circumstantial evidence that there was a concerted effort to "cover one's tracks" – events leading up to Plaintiff's termination involved a conspicuously intense four month period of negative interactions following four years of relatively serene company service. Second, there is the comment Zander made in the staff review meeting that he "wants her out legally,"[11] as well as a question of "how do we explain this to a jury?" noted by McLean.[12] These comments could reasonably be interpreted to mean that Defendant was trying to obscure an action that was perhaps illegal. Third, the introduction of the 9-box rating system also raises warning flags, in that it was introduced for the first time at the February SLT meeting Plaintiff, placed Plaintiff unanimously at the bottom of the executive staff, and then was apparently never used again. Finally, various comments made by the executives seem to indicate that they were over-reaching in their effort to portray Plaintiff as a poor performer. For example, in his deposition Zander states that Metty "broke the record" for scoring badly in her 9-box rating, in a system that of course had no records to break after having been implemented for the first time that day.[13]

---

[11]The specific remarks of that meeting largely come out of the handwritten Oxford notes. Oxford was not officially transcribing the minutes of that event, so Defendant challenges their accuracy generally.

[12]Def. 387.

[13]Zander Dep. at 130.

Though Defendant downplays the language cited in the Oxford notes as overly vague, combined with the other factors listed above it is nonetheless a sufficient basis on which a reasonable jury could find that the SLT's stated reasons were not genuine. This meets the purpose of the pretextual analysis, which is not to force the Plaintiff to prove the true intent of the Defendant, a nearly impossible task absent express language, but simply to establish that the Defendant's stated reasons are not the true ones. *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450 (7th Cir. 1999) ("[F]or a plaintiff to prevail on a defendant's motion for summary judgment, he need not show "pretext plus," and he must only produce evidence from which a rational trier of fact could infer that the company lied about its proffered reasons for his dismissal...If an inference of improper motive can be drawn, there must be a trial.") (quoting *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir.1994)). The above evidence provides evidence on which a jury could so find.

This court therefore finds that the evidence advanced by the Plaintiff provides a sufficient basis on which a reasonable jury could find that Defendant did not "honestly believe in its stated nondiscriminatory reasons." *See Jackson*, 176 F.3d at 984. The only question at this point is "whether the employer gave an honest explanation of its behavior," *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 396 (7th Cir. 1998), and though Plaintiff has not provided significant proof of the actual intent behind the employer's actions, she has presented evidence that raises significant questions regarding the intent Defendant has proferred.

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is DENIED with respect to Count I and GRANTED with respect to Count II.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **October 10, 2006**